FILED
2021 Nov-16  PM 12:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **TAMMI TAYLOR,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:18-cv-01608-MHH** |
| | } | |
| **PAM PALMER et al,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION AND ORDER

In this § 1983 action, Tammi Taylor asserts claims for alleged First Amendment violations against the City of Adamsville and Adamsville Mayor Pam Palmer, individually and in her official capacity.  Ms. Taylor contends that the constitutional violations occurred when Mayor Palmer "blocked" her from the City's Facebook page and when the City sued her in state court, seeking to curtail her Facebook postings about the mayor and the city.  Mayor Palmer contends that the claims against her in her official capacity are duplicative of the claims against the City and that she is entitled to qualified immunity with respect to the claims against her in her individual capacity.  The City contends that injunctive relief is inappropriate because Ms. Taylor no longer is "blocked" from the City's Facebook account.  The City also contends that, as a matter of law, its state court action against

Ms. Taylor did not violate the First Amendment.  Mayor Palmer has asked the Court to enter judgment in her favor on Ms. Taylor's claims, and the City has asked the Court to limit the remedies available to Ms. Taylor.  (Doc. 76).  This opinion resolves the defendants' motion for summary judgment.

This opinion begins with a discussion of the standard that a district court uses to evaluate motions for summary judgment.  Then, consistent with the summary judgment standard, the Court identifies the evidence that the parties have submitted, describing the evidence in the light most favorable to Ms. Taylor.  Next, the Court evaluates the claims against Mayor Palmer, considering first the claims against her in her official capacity and then the claims against her in her individual capacity. Finally, the Court evaluates the claims against the City, considering first Ms. Taylor's request for injunctive relief and then Ms. Taylor's First Amendment claim against the City as it relates to the City's state court action against her.

## I.

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  To demonstrate a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *White v. Beltram Edge Tool Supply, Inc.,* 789 F.3d 1188, 1191 (11th Cir. 2015). Accordingly, the Court views the evidence in the light most favorable to Ms. Taylor and draws all reasonable inferences from the evidence in her favor.

## II.

Much of the evidence in this case is undisputed. Pam Palmer is the current mayor of the City of Adamsville, Alabama and was mayor during all times relevant to this litigation. (Doc. 74-1, p. 9, tpp. 22-23). The City of Adamsville maintains two Facebook pages: the City of Adamsville's Facebook page and the Adamsville's Police Department's Facebook page. (Doc. 74-1, p. 32, tp. 115). The City of Adamsville's Facebook page is used to keep citizens informed about city business. (Doc. 1, p. 7, ¶ 20).[1] The Adamsville's Police Department's page is used to keep

---

[1] The defendants agree with this characterization of the City's Facebook page. (Doc. 76, p. 3, ¶ 1).

the public "aware of what[] [is] going on," to post about crime, and to post about wanted suspects. (Doc. 85-1, p. 9, tpp. 24-25). Mayor Palmer is an administrator for both pages. (Doc. 74-1, p.32, tpp. 115-16; Doc. 85-1, p. 9, tp. 24). As an administrator, Mayor Palmer can "block" Facebook users from those two pages, preventing the blocked user from commenting on the page and "liking" comments and posts made by other people on the page. (Doc. 74-1, p. 32, tp. 117).

Tammi Taylor is a citizen of the City of Adamsville and an "outspoken critic of the City." (Doc. 1, p. 1, ¶ 1). According to Mayor Palmer, Ms. Taylor probably is "the most vocal critic of the City of Adamsville." (Doc. 74-1, p. 42, tp. 157). Ms. Taylor has "criticized the City, its elected officials and employees, its practices and procedures, and especially the Mayor for several years." (Doc. 83, pp. 5-6).[2] This criticism took many forms, including posts on the City's Facebook page. (Doc. 83, p. 6; Doc. 74-3, p. 121, tp. 119; Doc. 85-22, pp. 2-3, ¶ 3). According to Ms. Taylor,

---

[2] Ms. Taylor describes her advocacy as follows:

> I have spoken many times at City Council Meetings concerning the City Council and the Mayor's lack of involvement to better our City. I have spoken about the City's littering problem and instituting a volunteer program for community service in order to pay off traffic tickets. I also spoke up regarding a councilman, who I believed was illegally living outside the area he was elected to represent, and my concerns as to the Mayor's personal relationships with other City employees. I have spoken out regarding the "poop train," the City's removal of employee benefits, checks paid to City employees from the "Adamsville Landfill Authority Board," and many other areas of concern that I see within my City.

(Doc. 85-22, p. 3, ¶ 4).

the City has deleted posts she made on the City's Facebook account.  (Doc. 38-7).[3]

Mayor Palmer and Ms. Taylor have a contentious relationship.[4]  Of note, Mayor

Palmer has filed many police reports against Ms. Taylor.  (Doc. 74-1, p. 48, tpp.

180-81).

In December of 2016, Mayor Palmer "blocked" Ms. Taylor from the City's

Facebook page.  (Doc. 74-1, p. 33, tp. 121).  About a week later, Mayor Palmer

purported to "unblock" Ms. Taylor on the advice of one of the attorneys for the

League of Municipalities.  (Doc. 74-1, pp. 33-34, tpp. 121-22).[5]  The steps Mayor

Palmer took did not restore Ms. Taylor's access to the City's Facebook page; she

still cannot post comments or like comments and posts made by others on the City's

Facebook page.  (Doc. 85-22, pp. 3-4, ¶ 7).  As a result, Ms. Taylor contends that

---

[3] Mayor Palmer admits that she has deleted posts from the City's Facebook page, but she cannot remember specifically deleting Ms. Taylor's posts.  (Doc. 74-1, p. 43, tpp. 158-60).

[4] The record is replete with evidence of conflict between Mayor Palmer and Ms. Taylor.

According to Mayor Palmer, Ms. Taylor threatened to "blow [her] off the float" at the City's Christmas parade in 2016.  (Doc. 74-1, p. 45, tpp. 168-69).  Ms. Taylor denies this allegation.  (Doc. 74-3, pp. 232-33, tpp. 230-31).

Ms. Taylor alleges that, at the request of Mayor Palmer, at least eight police officers attempted to stop her from placing campaign signs on a friend's property when Ms. Taylor was running for mayor in 2020.  (Doc. 85-22, pp. 4-5, ¶ 11).  Generally, Ms. Taylor "feel[s] threatened and harassed by Mayor Palmer and the City."  (Doc. 85-22, p. 5, ¶ 15).

[5] Mayor Palmer does not remember details of the conversation with the attorney for the League of Municipalities, (Doc. 74-1, p. 34, tpp. 123-24), and those details do not appear elsewhere in the record.

she is "not able to express [her] beliefs regarding City events, bring attention to matters of public concern, or participate in matters that affect [her] and [her] community." (Doc. 85-22, p. 4, ¶ 8). There is no evidence that explains why Ms. Taylor still cannot access the City's Facebook page from her preferred Facebook account, but the record reflects that Ms. Taylor is not listed as a "blocked" user on the City's page. (Doc. 44, p. 2).[6]

Approximately 18 months after Mayor Palmer blocked Ms. Taylor from the City's Facebook page, the City of Adamsville filed a lawsuit against Ms. Taylor in the Circuit Court of Jefferson County, (Doc. 1-1), allegedly because Ms. Taylor was "increasingly disruptive, threatening and harassing." (Doc. 1-1, p. 3, ¶ 1). The City asked the state court to:

---

[6] In the Court's order concerning Ms. Taylor's motion for a temporary restraining order, the Court stated:

> It is undisputed that the administrators for the City's Facebook pages blocked Ms. Taylor from the pages in 2016. During the evidentiary hearing, Mayor Palmer accessed the City's page and demonstrated that Ms. Taylor is not one of the two Facebook users currently blocked from the City's public Facebook page. The reason for Ms. Taylor's current inability to "like" or "comment" on the City's two public pages is not clear to the parties or the Court, but the City of Adamsville does not oppose Ms. Taylor having full access to the City's Facebook pages so that Ms. Taylor, like all citizens of the City of Adamsville, may participate in the public discussion on those pages.

(Doc. 44, p. 2). Facebook has confirmed that there is "no restriction" on the City's Facebook page that would prevent Ms. Taylor from posting comments or liking comments and posts made by others on the page. (Doc. 74-4, p. 6).

Ms. Taylor has a second Facebook account from which she could access the City's Facebook page, but Ms. Taylor does not wish to use that page to participate in public discussion regarding the City of Adamsville. (Doc. 74-3, pp. 28-29, tpp. 26-27).

enter a Preliminary Injunction enjoining [Ms. Taylor or any associate of hers] from any or all of the following:

a. From contacting any employee or elected official of the City at City Hall by telephone or by any forms of written communication.

b. From intentionally following any employee or elected official of the City or directing anyone to do so by means of any vehicle.

c. Being present at City Hall unless with permission from the Mayor or City Clerk and only with the City first arranging for adequate security.

d. From publishing in any manner or form any intentionally false, fraudulent or defamatory statements about the City, its elected officials or employees.

(Doc. 1-1, pp. 11-12).  The state court granted Ms. Taylor's motion for summary judgment and dismissed with prejudice all claims against her.  (Doc. 85-3, p. 6).

### III.

Ms. Taylor "concedes that her claims against [Mayor] Palmer in her official capacity are duplicative of her claims against the City." (Doc. 83, p. 16 n.14).  Thus, the Court grants Mayor Palmer's motion for summary judgment with respect to Ms. Taylor's official capacity claims.  Ms. Taylor's individual capacity claims against Mayor Palmer focus on two actions:  the City of Adamsville's lawsuit against Ms. Taylor and Mayor Palmer "blocking" Ms. Taylor from the City's Facebook pages. (Doc. 1, p. 11).

With respect to Ms. Taylor's claims relating to the state court lawsuit, Mayor Palmer argues that the state action is attributable only to the City, not to her.

(Doc. 76, p. 21; Doc. 86, pp. 8-9).  The record before the Court contains no evidence that supports Ms. Taylor's attribution of the state court action to Mayor Palmer.  The plaintiff in the state court complaint is "THE CITY OF ADAMSVILLE, ALABAMA, ON ITS BEHALF AND ON BEHALF OF ITS ELECTED OFFICIALS AND EMPLOYEES."  (Doc. 1-1, p. 2).  Mayor Palmer falls into the group of people that the lawsuit is brought on behalf of, but so do many other people.

Importantly, Ms. Taylor consistently alleges in her complaint in this action that the City of Adamsville brought the state action against her.  Ms. Taylor alleges that "the City of Adamsville filed suit against [her] in the Circuit Court of Jefferson County, Alabama," (Doc. 1, p. 9, ¶ 24), "[t]he City of Adamsville has filed this suit against Tammi Taylor," (Doc. 1, p. 9, ¶ 27), and "[a]s a result of her outspoken criticism, she has been sued by the City," (Doc. 1, p. 11, ¶ 34).  In Ms. Taylor's brief in opposition to the defendants' motion for summary judgment, she states that "the City filed suit against [her] in Jefferson County, Alabama."  (Doc. 83, p. 14).

Though she does not say so explicitly, Ms. Taylor appears to suggest that Mayor Palmer was the driving force behind the lawsuit, even though it was not brought in her (Mayor Palmer's) name.  Counsel for Ms. Taylor explored this theory during Mayor Palmer's deposition, (Doc. 74-1, p. 10, tpp. 27-29), and Mayor Palmer consistently denied significant, outsized involvement, (Doc. 74-1, p. 10, tpp. 27-

8

29).[7]   Ms. Taylor has not produced evidence to refute Mayor Palmer's denial.

Because Ms. Taylor has identified no evidence that indicates that Mayor Palmer was

---

[7] The following exchange from the deposition is illustrative:

> Q. Do you understand that the City of Adamsville . . . has filed suit against Tammi
> Taylor for defamation, do you understand that?
>
> A. Certainly.
>
> Q. And were you the one who approved that suit?
>
> A. Myself and the Council, I believe.
>
> Q. And did you recommend to the Council that you sue Tammi Taylor, that the
> City sue Tammi Taylor?
>
> A. No, ma'am, I did not.
>
> Q. Did the – so you did not recommend that?
>
> A. No, I did not.
>
> Q. Can the City Council act on its own behalf without a recommendation from the
> Mayor?
>
> A. Certainly.
>
> Q. Is it your testimony that the City authorized that act without a request from you?
>
> A. Yes.
>
> Q. So it was the City Council who decided without a request from you to sue Tammi
> Taylor?
>
> A. Myself and the City Council.
>
> Q. Right, but my question is:  Without a request from you, you have testified you
> did not request, to make the request to the City Council to sue Tammi Taylor?
>
> A. That's correct.
>
> Q. So, then, the City Council decided to sue Tammi Taylor without a request from
> you.

the driving force behind the state court action and because Ms. Taylor has consistently alleged that the state court lawsuit was brought by the City, the Court concludes that the state court lawsuit is attributable only to the City of Adamsville, not Mayor Palmer.  Thus, the Court grants Mayor Palmer's motion for summary judgment with respect to claims brought against her in her individual capacity concerning the state court lawsuit.

In contrast, Mayor Palmer acknowledges that she removed Ms. Taylor from the City's Facebook pages, so that conduct is attributable to the mayor.  (Doc. 74-1, p. 33, tp. 121).[8]  Mayor Palmer argues that she is entitled to judgment in her favor on Ms. Taylor's individual capacity claim concerning the Facebook pages based on the affirmative defense of qualified immunity.

"Qualified immunity offers complete protection for individual public officials performing discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Sherrod v. Johnson*, 667 F.3d 1359, 1363 (11th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Initially, a defendant asserting the

---

A. Myself and the City Council decided to file suit against Tammi Taylor without a request from me.

(Doc. 74-1, p. 10, tpp. 27-29).

[8] In her deposition, Mayor Palmer stated:  "I believe that I blocked [Ms.] Taylor [from the City's Facebook pages] sometime around December of 2016."  (Doc. 74-1, p. 33, tp. 121).

defense of qualified immunity must establish that she was "acting within the scope of [her] discretionary authority when the allegedly wrongful acts occurred." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)).  If the defendant succeeds, then the burden shifts to the plaintiff to show that qualified immunity should not apply. *Loftus*, 690, F.3d at 1204.  To carry that burden, a plaintiff must establish that the defendant violated her constitutional rights and that the constitutional rights violated were "clearly established" at the time of the alleged wrongdoing. *Loftus*, 690 F.3d at 1204.  Courts may address these two prongs in any order, considering the unique circumstances of each case. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

With respect to the defendant's initial burden to "establish that the challenged actions were within the scope of [her] discretionary authority, a defendant must show that those actions were (1) undertaken pursuant to the performance of [her] duties, and (2) within the scope of [her] authority." *Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018) (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).  "In other words, 'we ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [her] power to utilize.'" *Estate of Cummings*, 906 F.3d at 940 (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)).

Here, Mayor Palmer was acting within the scope of her discretionary authority when she "blocked" Ms. Taylor from the City's two Facebook pages. In managing the City's Facebook accounts, Mayor Palmer was performing the job-related function of guiding the flow of information to the citizens of the City of Adamsville. The Court is not aware of law which places this conduct beyond the mayor's power. *Estate of Cummings*, 906 F.3d at 940. Therefore, Mayor Palmer has satisfied her initial burden of proving that she acted within her discretionary authority.

Ms. Taylor likewise has carried her burden to show that questions of fact preclude application of the defense of qualified immunity as a matter of law. Ms. Taylor contends that Mayor Palmer violated her First Amendment right to free speech when the mayor "blocked" her from the City's Facebook page. (Doc. 1, p. 11). To demonstrate that the alleged First Amendment right was clearly established when Mayor Palmer blocked her, Ms. Taylor must demonstrate that an objectively reasonable person in Mayor Palmer's position would have understood that her conduct violated federal law. *Loftus*, 690 F.3d at 1205. To do so, Ms. Taylor may point to a materially similar case that was decided by the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the Alabama Supreme Court before Mayor Palmer blocked her. *Loftus*, 690 F.3d at 1204. The specific facts of the cited case must be close enough to the facts here to put Mayor Palmer on notice that her conduct was unlawful. *Loftus*, 690 F.3d at 1204.

Alternatively, Ms. Taylor may "point to a broader, clearly established principle that should control the novel facts of the situation." *Loftus*, 690 F.3d at 1204-05 (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012)). "The principle must be established with obvious clarity by the case law so that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Loftus*, 690 F.3d at 1205 (quoting *Terrell*, 668 F.3d at 1556). "In other words, 'in the light of pre-existing law the unlawfulness must be apparent.'" *Loftus*, 690 F.3d at 1205 (quoting *Terrell*, 668 F.3d at 1556).

Finally, Ms. Taylor may demonstrate that the conduct "so obviously violate[s] the constitution that prior case law is unnecessary." *Loftus*, 690 F.3d at 1205 (quoting *Terrell*, 668 F.3d at 1555). "This 'narrow' category encompasses those situations where 'the official's conduct lies so obviously at the very core of what the [First Amendment] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law.'" *Loftus*, 690 F.3d at 1205 (quoting *Terrell*, 668 F.3d at 1557).

Ms. Taylor recognizes that there is no materially similar case to hers, stating that the "Eleventh Circuit has not ruled directly on the merits of a First Amendment claim arising out of a public official's blocking users on social media." (Doc. 83, p. 34). And Ms. Taylor does not argue that Mayor Palmer's conduct is so extreme

and obviously unlawful so as to render "prior case law . . . unnecessary." *Loftus*, 690 F.3d at 1205 (quoting *Terrell*, 668 F.3d at 1555).  Thus, Ms. Taylor must "point to a broader, clearly established principle that should control the novel facts of the situation." *Loftus*, 690 F.3d at 1204-05 (quoting *Terrell*, 668 F.3d at 1255).

Ms. Taylor may carry her burden by identifying "broad statements of principle in case law [that] are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002).  "For example, if some authoritative judicial decision decides a case by determining that 'X Conduct' is unconstitutional *without tying* that determination to a particularized set of facts, the decision on 'X Conduct' can be read as having clearly established a constitutional principle:  put differently, the precise facts surrounding 'X Conduct' are immaterial to the violation." *Vinyard*, 311 F.3d at 1351 (emphasis in *Vinyard*).  "These judicial decisions can control 'with obvious clarity' a wide variety of later factual circumstances." *Vinyard*, 311 F.3d at 1351 (quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997)).  The broad principle must be so clear that "every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted." *Vinyard*, 311 F.3d at 1351.

One such broad principle, established clearly and unambiguously by the Supreme Court of the United States, is that government officials "may not regulate

14

speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829 (internal citation omitted). Put another way—and mapped onto the formula outlined by the Eleventh Circuit in *Vinyard*, as discussed above—"X Conduct" is defined here as suppressing particular views when regulating speech. Supreme Court precedent has clearly established that viewpoint discrimination is unconstitutional across the board, without reference to a particular factual situation, such that "every objectively reasonable government official . . . would know" it. *Vinyard*, 311 F.3d at 1351.

Here, Mayor Palmer targeted and suppressed views that she disliked when she blocked Ms. Taylor from the City's Facebook page. In a police report Mayor Palmer filed against Ms. Taylor on December 9, 2016, Mayor Palmer stated that Ms. Taylor "ha[d] been blocked from the [Facebook] page due to her negative comments about the mayor, council and the city in general and the fact that she was always trying to incite anger and hate." (Doc. 38-8, p. 3). By admitting that she blocked Ms. Taylor

for criticizing the City, Mayor Palmer necessarily admits that Ms. Taylor's "opinion[s] . . . [were] the rationale for the restriction." *Rosenberger*, 515 U.S. at 829. "[E]very objectively reasonable government official facing the circumstances would know" that suppressing political dissent violates federal law. *Vinyard*, 311 F.3d at 1351. That is what Mayor Palmer did when she "blocked" Ms. Taylor from the City's Facebook page. Because the record, viewed in the light most favorable to Ms. Taylor, demonstrates that Mayor Palmer engaged in obvious viewpoint discrimination, Mayor Palmer is not entitled to qualified immunity as a matter of law on the claims against her in her individual capacity.[9]

## IV.

With respect to Ms. Taylor's claims against the City of Adamsville, Ms. Taylor has not presented evidence to support her claim for injunctive relief based on Mayor Palmer's effort to block her from the City's Facebook account. Ms. Taylor asks the Court to "[e]nter an injunction requiring Defendants to unblock [Ms.] Taylor from the City of Adamsville's Facebook page." (Doc. 1, p. 11). As discussed above, the City has demonstrated that Ms. Taylor no longer is "blocked" from the City's Facebook page. (Doc. 44, p. 2). Ms. Taylor reports that she cannot use the City's Facebook page. (Doc. 85-22, pp. 3-4, ¶ 7). Her testimony is uncontradicted,

---

[9] Notably, viewpoint discrimination is prohibited in nonpublic forums, limited public forums, and public forums. *Cornelius v. NAACP Legal Defense & Edu. Fund, Inc.*, 473 U.S. 788, 806 (1985); *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469-70 (2009).

but there is no evidence that links Ms. Taylor's present inability to use the City's Facebook page to conduct on the part of Mayor Palmer or any other city official. Thus, the Court grants the City's motion for summary judgment on Ms. Taylor's claim for injunctive relief.[10]

The City also asks the Court to enter judgment in its favor on Ms. Taylor's claims "concerning the state-court action because the action was not brought to prevent [Ms.] Taylor from posting on her own Facebook page." (Doc. 76, p. 21). Factually, this statement is correct. In its state court complaint, the City asked the Jefferson County Circuit Court to prevent Ms. Taylor from "publishing in any manner or form any intentionally false, fraudulent or defamatory statements about the City, its elected officials or employees." (Doc 1-1, p. 12). Were this relief granted, Ms. Taylor still would be able to post statements other than intentionally false, fraudulent, or defamatory statements about the City, its elected officials, or employees. But that is irrelevant to Ms. Taylor's claims as they relate to the City's state court lawsuit. Viewing the evidence in the light most favorable to Ms. Taylor, a reasonable jury could find, at the very least, that the state court lawsuit was part of

---

[10] The City also argues that it is "entitled to summary judgment as to [Ms.] Taylor's request for injunctive relief as to the state-court action." (Doc. 76, p. 20). But, in her complaint, Ms. Taylor did not request injunctive relief as to the City's state court action against her. (Doc. 1). In any event, the issue is moot because the state court action was dismissed with prejudice on October 30, 2020. (Doc. 85-3, p. 6).

a larger effort by the City to chill Ms. Taylor's speech and retaliate against her for her public criticism of Mayor Palmer and other city officials. Thus, the Court denies the City's motion for summary judgment with respect to Ms. Taylor's claims for damages arising out of the state court lawsuit.

## CONCLUSION

For the reasons discussed above, the Court enters judgment for Mayor Palmer on Ms. Taylor's claims against her in her official capacity and on any individual capacity claim concerning the City's state court lawsuit. The Court also enters judgment for the City on Ms. Taylor's request for injunctive relief relating to her ability to access the City's Facebook pages from her preferred Facebook account. The Court denies the balance of the defendants' summary judgment motion.

**DONE** and **ORDERED** this November 16, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE